All right, we are getting ready to hear argument in our last case of the day, United States v. Singletary. Ready? Thank you, Your Honors. May it please the Court, Jenny Lyston for Christopher Singletary. I'm going to apologize in advance for my voice. I may be coughing and clearing my throat quite a lot. I do have a cold, but I assure you it is just a cold. I have tested myself continuously. Your Honors, this case presents two questions for this Court. The first is whether Mr. Singletary's claim of judicial vindictiveness falls outside the scope of his otherwise valid appellate waiver. And two, whether Mr. Singletary has sufficiently established a claim of judicial vindictiveness. We believe the answer to both questions is yes. And so we are asking this Court to vacate the sentence and remand this case to a different district court for resentencing. So turning to the first question, whether or not the judicial vindictiveness claim falls outside the scope of the appellate waiver. Can I ask you a question? Would it make more sense to start with the merits because, and here's the question, if we thought hypothetically that there was not a vindictive sentencing claim here, would we have to reach the question about the scope of the waiver? We would not, Your Honor. So you could, for instance, just say, assuming without deciding that we believe a claim of judicial vindictiveness does fall outside the scope of the appellate waiver, we nonetheless believe that Mr. Singletary fails to state a claim. And that certainly is an option. This Court has taken different approaches to that. However, you know, sometimes this Court will go ahead and I would suggest, given the novelty of this issue of the appellate waiver, it would behoove this Court to perhaps give other courts guidance on this issue. But I certainly understand, you're certainly correct, Judge Harris, that this Court does not necessarily have to reach that issue. And I can certainly turn straight to that issue. You make a very reasonable point that we might want to reach it regardless, so I don't want to throw you off your schedule. I'm here for the Court's pleasure. So turning to the merits of the actual claim, I just want to point out that the government says that we are on plain error here. We are not. The whole point of plain error is to give the District Court the first opportunity to address any sort of error and to make a record. And if the Court doesn't have that opportunity and we come up on appeal, then we're generally on plain error review. However, in this case, Your Honors, the District Court was well aware of the possibility of a judicial vindictiveness claim. In fact, the government at JA 100 expressly says, you know, brings up North Carolina v. Pierce and then urges the Court to put on the record, says, you know, we think... But is that the same as you preserving your objection as to or raising the issue of judicial vindictiveness? It's one thing for the government to reference that there could be this claim, but you have not put the court on notice that you are asserting it. And so, Your Honors, I would say that we certainly did request a lower sentence and we urged the Court not to impose this sentence consecutively. And so, I do believe, and again, the point of plain error is to give the Court the first opportunity to address something, a particular error. And this Court was well aware and, you know, clearly indicated, said again and again, this is new evidence, this is a new sentencing, this is new evidence and, you know, there are... So, help me understand. Yes, Your Honor. Listen, I very much appreciate the difficult position that raising a judicial vindictiveness claim to the judge sentencing you might raise. So, I don't want to make light of that in any way. But, you know, we require lawyers to make hard arguments in lots of contexts, right? And so, if I don't think the government's raising the issue is sufficient, help me understand your argument. Again, the government raised it and said, listen, judge, be careful, make the record. But it looks a little bit like, given that it's raised, you're sort of acquiescing at that level that the Court has done its job on that issue. Well, so to a certain extent, I'm not sure what the point would be for our attorney to then say, well, you didn't give me this, you know, you didn't give us the sentence that we wanted and so now we think, you know, we think this is a judicially vindictive. You preserved that issue, right? That you didn't give us the sentence that you wanted. The problem is that's the waiver problem. But the issue that we've got before us is, judge, this appears on the record to be a vindictive sentencing. You are sentencing the same way that if the judge said, I'm sentencing you longer because you're a woman, right, or because you're black or because, you know, some other plainly impermissible factor, the lawyer has to say, judge, you cannot sentence someone longer because they are a woman, right? Now, if we got that error, we might find that to be a plain error, right? But we would still review it under plain error, no? And so, Your Honor, I think, again, I don't know what else the Court could have put on the record that we don't already have here to justify the sentence. We don't know because you didn't raise that objection, right? The challenge we've got, the reason we review things on plain error is because if it's not raised to the district court judge, we don't know what more the district judge could or would have put on the record. And my position is that, you know, this district court was very well aware that he needed to put, of the possibility of a North Carolina v. Pierce claim and that he needed to put new evidence on the record justifying the extent of his increase. But even if we are on plain error, yes. So I'm clear about what you're asking us to hold. Not that vindictive sentencing claims are never, you want us to say that in this case, in light of these particular facts. Yes, Your Honor. Okay. Yes. But even if we are on plain error, Your Honors, I believe that we satisfy that standard. So looking to whether or not we have actually stated the claim. There's no dispute here, of course, that the sentence is actually harsher. But, Counselor, there does seem to be like a huge disconnect between you and the government in terms of how much harsher the sentence is. So the government thinks this is a six-month increase, and you think it's an 11-year-ish increase. Yes. Why isn't the government right that the sentence went up on the Hobbs Act from six years to six and a half years? That's the sentence increase. Now, there's this other question, which is we now have a new state conviction and a state sentence, and so for the first time I have to figure out how to run this sentence in connection with that new state sentence. But that's not an increase. That's just like a separate decision. So, Your Honor, so the first time around, and it is true, these are new state convictions, and the court has to then make the decision to run the sentence concurrently or consecutively. And the first time around, the district court, Mr. Singletary only had about two months left to serve on his state sentence. And even though... Different state sentence, though, right? Different state sentence, yes. Right. Absolutely. So there's a lot of convictions going on, but that was the earlier conviction that he was already committed on. He had charges pending but no conviction. That's correct. Correct. And also with respect to that first time that the court ran it concurrently, it was at the request of defense counsel at sentencing, and that was based on getting credit for the time that the defendant was in custody while pending these charges, the federal charges. Correct. And so even though there were, you know, Mr. Singletary only had two months left to serve on that state sentence, the district court nonetheless said, yeah, well, go ahead, we'll run it concurrently. Again, at the request of defense counsel, and only because as it related to getting credit for the time that he was in custody pending on those federal charges. And the district court agreed with that and found that, you know, the 156-month sentence was the sentence that was sufficient but no greater than necessary for Mr. Singletary on this sentence, even if he'd gotten the guideline range wrong. He felt that was the appropriate sentence for Mr. Singletary. At the resentencing, after this, you know, after his successful appeal, he does have the new state convictions, and we agree that that is new information on which the district court could appropriately rely to increase the sentence. The district court decided to run this federal sentence now consecutively to this new extremely long state sentence, even though the state court had announced that it was fine with running his state sentence. But that's the state court's decision. That is, absolutely. And now the district court can make a different decision. Right. And so the question is then, you know, do we really need, do we really think that Mr. Singletary needs to, is this new information sufficient to warrant such a, we contend it is a dramatic increase to his sentence, to running the new, running his federal sentence consecutive to the new state sentence, we believe is a increase to the sentence. And that's, I really don't have a whole lot more to say about that. I'm trying to figure out a little bit of sort of maybe background, taking a half step back. When we remand for a sentencing error, sometimes we remand, particularly with respect to supervised release violation, sometimes we remand the entire sentencing and sometimes we do a limited remand. And I guess the question that I've got for you is, do you, just as an officer of the court, since you're standing here and you said you were almost done, do you have a view about what the calculus ought to be for us? It seems like we have discretion to do either of those. But the question is, how should we evaluate whether to do it? Obviously, in this case, we did a complete remand for the Rogers error. We have other cases where we do a limited remand for maybe not Rogers errors, but other supervised release errors. Miller error. Do you have thoughts about how we ought to think about that question? You can say no, because this is not presented by the case at all. You just are quite good at this, so I thought I'd ask your views. I mean, my understanding is if it's McMiller error and the court has failed to explain why it's imposed certain conditions of supervised release, it just goes back for a limited remand on the conditions, as opposed to the Rogers Singletary error, where the court has failed to announce the conditions of supervised release altogether. And so those conditions have not been imposed. That goes back for a full resentencing. Is it? I'll let you. I'll stop. Your Honor, our basic contention here is that the two new pieces of information that the court had, which was Mr. Singletary's admittedly poor performance in prison, and the new state conviction simply do not warrant an increase of this magnitude. And I would encourage the court to look at Mr. Singletary's infractions. They do go all the way back to 2015, which was four years before the federal sentencing, when he's 19. And it's not a great record. Mr. Singletary has not made it, you know, easy for us at all. But he is a very young man, and particularly in conjunction with the very unusual hearing that we had in front of this district court and the unusual frustration that this district court expressed with Singletary resentencings, I think it does raise at least the public perception of a vindictive dismotivation on the part of the court. Yes, Your Honor. Was the judge frustrated by the resentencings itself, or was it more so, when I read the record, it seemed to be the position of the U.S. Attorney's Office conceding error, because what the judge said was, I want to get this right. And so if I'm doing something wrong, let me know as I'm doing it so I can fix it. And so you never complained, and then you went, you know, and you conceded error. So what's going on? But it seemed that the frustration was focused there. Am I reading that right? I think the district court certainly was frustrated with the government. However, I think the district court was also frustrated with the Singletary decision itself, which, you know, said it's baffling. And, look, I know that the cold transcript does not adequately reflect things like, you know, tone of voice or decibel level or, you know, district court's facial expressions. But I think you can at least pick up on some of the parts of the transcript where, you know, everyone is trying to calm the court down and saying, we're just as frustrated as you. You know, Singletary is a blow to all of us. I mean, it at least appears that in a number of these other, you know, Singletary type remands, Judge, this particular district court judge did not change the sentence because they were not aggravating or didn't appear to be aggravating factors that were argued. When you look at the other Singletary cases, we don't see a scenario, right, where, you know, he's increasing everybody's sentence that's remanded on Singletary, right? He's increasing the guy who's, like, got a new conviction and has, like, terrible, like, performance in prison. And is the poster child for Singletary resentencings. Is the Christopher Singletary. And I think the important part about vindictiveness as well is the public perception and the chilling effect that these have on other, all defendants. And I can tell you it certainly had a chilling effect in our district if we know that. You could come up, this is sort of why I was asking the question earlier. You could come to this court and ask for a limited remand. I think you have, we have the authority, I believe, to issue a limited remand or a complete remand, right, for a whole resentencing or just on the supervised release conditions. Like, that's an option that's available. If somebody wants to make a Rogers claim, but I only want to talk about supervised release on remand, that's a permissible claim, right? And we can do that, I think, on appeal. I mean, we've held, right, in Rogers and Singletary that the appropriate, I don't think, we certainly haven't ruled out doing it that way, but we have held that the appropriate remedy is to vacate the whole sentence and send it back. But that would not, I don't think, preclude a defendant from saying exercise your discretion to do it differently. Can I ask you a question? Because I take your point about the chilling effect 100%. And so I am trying to figure out in these vindictive sentencing cases, and we don't really have that much law on it. Like, you would want, you know, on the one hand, we're sending it back, and, you know, the vindictive sentencing cases say this, it just makes sense. Like, if things have changed, you want judges to be able to take account of that in sentencing. And if you put on the record things that have arisen since the original sentencing, that is, in most cases, certainly is going to rebut any presumption that would otherwise arise of vindictiveness. You know, on the other hand, you'd think you would need some kind of a, sorry, word, just like some way to take account of something that just looked facially pretextual. Like, and I just imagine just, you know, a hypothetical case where, you know, all the facts, it's this case, but this time it was one disciplinary violation. And he gets high. And he says, right, I'm giving you an 11-year increase. So you have to be able to contend with that. But at the same time, and I do think this is maybe particularly true in a case where substantive reasonableness review has been waived in the plea. Like, we can't on a vindictiveness claim be doing, like, substantive reasonableness review. Is this a reasonable, assuming for a minute we're talking about an 11-year increase, is that reasonable on these facts? That can't quite be the inquiry either. So it's not substantive reasonableness review. And here's why. It's because we're not looking at the actual sentence that the guy gets. Right? We're only looking at the increase. Right? Because a sentence can be perfectly substantively reasonable and still be vindictive. But it does seem like what you're asking us to do is basically say, like, 11 years on one side and on the other side these disciplinary infractions plus the new sentence, the new conviction and sentence. Does that seem right to us? Which is very akin to substantive reasonableness analysis. And it does feel that way. And it's funny that, you know, my friend on the other side and I were just out there talking about that this is why this case is very interesting but also very frustrating because as you say, Judge Harris, there is so little case law out there on this issue. And the scenario that you pose is exactly the one that, you know, I was thinking of. Like, you know, surely there has to be some ability to review whether or not this increase, whether or not the court's stated justification for the increase is adequate and sufficiently supports the extent of the increase. Because otherwise, you know, if there's no review of that whatsoever, then as you say, you could have the scenario where he's got one. Why isn't that reviewed? I took Judge Harris' point. We do that review. That's called substantive reasonableness. It just happens in this case that review is waived. And so in this context where you've got a plea waiver, we don't do that substantive review. But it's not that that review is not available. It just happens to be waived here. And again, I don't think it's substantive reasonableness review because, again, we're not looking at the sentence. We're looking at the increase. So in United States v. Aberrant, for example, Judge Harris, you were on that panel. The guy, the first sentence he got was a downward variance of like 200 months. And then at resentencing, the court gave him 240, which was a within-guidelines sentence. Both of those sentences are perfectly reasonable. But the court at the second sentencing didn't give any reasons to justify the increase in the sentence. And so, you know, the presumption applied. Your Honor, I know that I see I'm over my time, so I will. That was on us. You still have your rebuttal time. Thank you, Your Honors. Mr. Bragdon.  May it please the court. I'm David Bragdon, and I represent the United States. I want to hit just a few points, and I'll answer any questions the court has. I think I did want to touch on the issue of plain error review. And I don't think the court should decide case by case whether plain error review applies. I think it does apply because the defendant didn't raise the objection. And I think there are a few things that defense that counsel is raising on appeal that weren't really flagged for the court. For instance, the defense is raising the extent of this increase and arguing that that was not justified. And they're also arguing that this consecutive state sentence is itself an increase that is not justified. Those things were not flagged for the district court, and I think that's part of the reason why plain error review is appropriate here, even if the court were to look at it case by case. On the merits, I want to break my comments. Can I ask a question that goes back to her just to help me understand? Assume there's no plea agreement in the context. I'm trying to understand a little bit. I think her argument is that substantive reasonableness only looks at the total sentence. And it didn't occur to me that that was true, but I guess I'm curious. Do you think that our substantive reasonableness only looks at the total sentence? Or would it also allow, in a hypothetical scenario where a district judge says, I'm going to give you five years on the drug offense, but given your performance in prison, I'm going to add 10 years to it. And so I'm going to give you a total of 15 years, and I articulate it that way. Even if a 15-year sentence might have been reasonable in total, could we do a substantive reasonableness and say, listen, whatever we want to say, 10 years for your performance in prison is unreasonable, even if you might have gotten there another way? I think so. And I agree with defense counsel that there's not a lot of case law that I've seen that really addresses this issue. I think intuitively, in a presumption of vindictiveness-type case, the court needs to look to some degree at the amount of the increase. I think that's a relevant factor, but I think it also is something that has to be seen in light of the court's discretion. And in Wasman, one of the cases we cited in our supplemental authority, the court specifically talks about the wide discretion of the district court. And so I think I don't know exactly- Can you help me understand what you mean by that? So that in the vindictiveness, we do consider the degree of the increase? Well- So what is a hypothetical where we might so consider it? So if it went back on remand and the judge said, well, you have this violation where you didn't wear the right shoes, and so I'm going to add 10 years to your sentence, how would that factor into our vindictiveness analysis? Obviously, that's a stylized hypothetical, but even taking that hypothetical, how would you put that into the vindictiveness inquiry as opposed to a substantive reasonableness inquiry? So when the government is rebutting the presumption, it rebutts it through, quote, objective information justifying the increased sentence. And I think the court could read that two ways. I think on the one hand, it could say, well, if there's objective information, which this new prison infraction would be, that's all we need to look at. That's the end of the analysis. Or it could say, you know, within the district court's deference, the objective information needs to justify the increase. So it's got to in some way be proportionate with the amount of the increase, which- Well, which is the government's position in this case? What should we do? I don't think the court has to reach that decision in this case because I think in this case, it's more than met. And so when I reviewed other cases, I didn't see-I could not find a single case that analyzed the extent of the increase. And so I am not- You're not asking us to foreclose that inquiry. I'm not asking you to foreclose that. I'm not sure whether it's allowed or not. But I think here- I mean, I guess it's in some ways, right, because I couldn't find any cases coming close to that hypothetical, which I take it as a tribute to the fact that our district court judges don't generally sentence people to 10 years vindictively. So it is to everybody's credit that these cases are very hard to find. But I appreciate that you are not trying to foreclose such an inquiry in the unlikely event that one became necessary. Yeah, it would be a very odd-if that hypothetical occurred, it's hard for me to imagine the government arguing, no, no, no, you can't consider the extent at all. I mean, it seems like that kind of extreme situation, you might want to take a close look at that. But I don't think it's presented here. In part because rebutting the presumption of vindictiveness requires looking at the degree of vindictiveness and the value of the rebuttal of it. And I could imagine a court saying, okay, this kind of analysis is a little bit like substantive reasonableness. We look at the extent, we give the district court wide deference, and if the district court has explained its reasons and it fits within that wide deference, then the presumption is rebutted. But I don't think any court has even come close because when they've seen these objective reasons, they're like, oh, yes, that completely makes sense. And I think we have that here as well. When we look at the infractions in this case, they do seem to reflect some immaturity just on this side of this defendant. There were incidents with, you know, some of them like getting in a fighting stance with the guard, but they described it as playful and the guard didn't find it threatening at all. They talked about him, the paddle incident actually involved not him, I think, going after a prison official, but, you know, going after another inmate. And even then, it's not clear that it was, whether or not it was in play or whether it was not. I mean, there's a range of infractions there, disobeying orders and things like that. And it appears to be a lot when you consider the number. But when you start looking at the type of infractions, they are, especially the ones that occurred and which the court focused on because he talked about the 16 infractions that had occurred between the first sentencing and then this new sentencing, but those in particular seemed, you know, milder. I agree that there's a range. There's absolutely a range. I did want to make one point, though, is I think from the district court's perspective, all 38 of these infractions were new. And I have not seen this before, but the pre-sentence report does not list the infractions for the offense. And in my experience, it always lists the infractions. Neither counsel in the first sentencing brought any infractions to the court's attention. The court didn't mention any of them. And so I think when it comes back to resentencing. I'm sorry. Were the infractions just first mentioned in the government's position paper? It was mentioned in the government's position paper for resentencing. So that's the first time they come up. And so it's not that there's 15 new to the court. All 38 of these are new to the court. And when I look at it. Is there any restriction on a, if we, when we're remanded for a full resentencing, I mean, is there any restriction on considering only new information that was not previously knowable? I mean, I don't think so. I guess that's what I'm, if it's a full resentencing, it's a full resentencing. And so whatever facts either side want to raise, they're entitled to raise without sort of a timeline cutoff. And that's part of the reason I did the supplemental authority letter and cited both Wasman and Texas versus, I'm going to mess up the name, but in both of those cases, they made it very clear that it's not just new information the court can consider. It's also newly discovered information. And even Pierce specifically identifies, you know, a defendant's prison record as the sort of information the court can consider. And so I think that absolutely it can consider that. And I think when it does consider that, you have, you know, an incident where he's chasing around a prison guard with a four-foot metal paddle trying to assault her. You have an incident and assault two other inmates. In that same incident, he spits on one of the inmates after he's restrained. You have a situation where he and a group of other inmates beat up an inmate, causing bruises and cuts to the inmate's face. You have four masturbation incidents. And one of them is harassing the guard where he says, come back to the door so I can finish. And even things as seemingly innocuous as offensive language, the actual language was, bounce those titties. And so this is a defendant who's creating a very hostile environment for the guards and the prison officials around him. He's threatening them. He's possessing weapons on three occasions. And so... Can I ask you a question? So we're talking about these infractions. And it does seem that some of this might turn on whether you think that is sort of sufficient to rebut a presumption that would arise from a six-month sentence increase, or whether you're asking whether it's sufficient to rebut a presumption that otherwise would arise from an 11-year increase. So what are we weighing it against in this case? I appreciate that question, Your Honor. I did want to get to that. So what I would say is the presumption of vindictiveness applies to the six months. The presumption of vindictiveness does not apply to running the sentence consecutive with the state sentence. And in deciding whether the presumption of vindictiveness applies, what the court asks is they look at the situation...  Oh, sorry. Sorry, Your Honor. Does that change, though, when we have the government saying, when the court has said, I'm thinking about a variance here. And then we have the government saying to the court, no, don't do it that way because then there's a judicial vindictiveness claim. Do it this way by making these sentences consecutive. First of all, I don't think so. I think the answer is no to that. And I would say a couple things. I think there's no evidence here that the court, you know, was ever inclined to run this statement concurrently or that it followed, that it did that only because the government suggested that. But what I would also say is the presumption of vindictiveness, we look at that not in the specific set of facts, but we look at in this kind of facts, would it be likely that a judge who does this was doing it for vindictive reasons? And so in this case, to apply the presumption, the court has to ask the question, would a judge imposing a concurrent sentence where the guidelines makes it discretionary whether to or not, would a judge imposing a consecutive sentence on a new state conduct, is that the sort of situation where it's reasonably probable that he acted vindictively? And I think the answer to that, I believe, is no. And so the presumption doesn't apply. Can I ask you a question? Because I really am wrestling with this, sort of what kind of an increase are we talking about? And I absolutely sort of, a lot of what you were saying seems extremely logical to me. And what makes it hard for me is that, you know, part of the point of the presumption, again, the presumptions that arise in this vindictive sentencing context, it really is sort of the message conveyed to the outward world. Like you really want to avoid a situation in which, you know, basically all of our supervised release law becomes dead letter because defendants would be crazy to take an appeal on a supervised release issue if they know it could lead to an 11-year increase in their prison sentence. And so how much do we have to worry about just sort of how this looks? The fact that by running it consecutively, it looks like Mr. Singletary's prison sentence just went up by 11 years. And I think that the reason, the rationale behind the original set of rules was to take that into account. They did not want, Pierce and cases following it, do not want to deter defendants from their appellate rights. But I think that affects how they structure this set of rules to apply judicial vindictiveness. I don't think that you then analyze that in case by case to determine do we apply the presumption or not. I will say, too, that I don't think it actually... Yes, Your Honor. In order to reverse the sentence, we've got to find the district court did something improper. Right? I mean, I take the point that we're concerned about appearances, but we also have to find the district court. In order to reverse the sentence, we've got to find he was vindictive. That's right. I mean, I think there's a presumption. If the presumption of vindictiveness were to apply, which we think it applies only to the six months, but let's say it applied to everything, the district court still set a lot to rebut that, and the court would have to determine, no, no, no, that's not enough. We still think you acted vindictively in spite of what you said. Technically, I think what we would find, and I think this is one of the reasons the Supreme Court has given us this somewhat unwieldy and underexplained set of presumptions, is what we would say is there is a presumption of vindictiveness, and that presumption has not been rebutted, which does spare us ever so slightly from saying this district court sentenced vindictively. Before my time runs out, I did want to say one more point along those lines. Even if the presumption applies to everything, I think it's rebutted here, and I think that the state sentence still matters in that regard, because if, and I was thinking about this, I know the state sentence wasn't a Hobbs Act robbery. It wasn't a robbery of a business. It couldn't have been charged federally, but let's just say, but it was a robbery. If he had been charged with a federal robbery using a firearm, in addition to the one he'd already committed, he would have had a mandatory additional seven years imprisonment for brandishing the firearm. He would have also gotten an enhancement for striking a victim on the head and causing some injury to that victim. He would have had both an additional seven-year consecutive sentence combined with a higher guidelines range. And so when the court, looking at this completely additional crime that it didn't take into account the first time, combines that with all of these prison infractions, that's what we look at in deciding whether or not it's rebutted. And so I think that, I do think that regardless, the court did rebut it here. Unless there's further questions from the court, I would ask the court to affirm. Thank you very much. Just briefly, Your Honors, Judge Harris, Judge Giles, I think you're right to focus in on this, the chilling effect that this potential sentence has on other defendants and just even the public perception of the appearance of judicial vindictiveness. Because I can tell you that everyone that I've kind of talked to about this case, when I tell them, you know, here's what he got the first time, here's what he got the second time, their immediate reaction is, oh, my God, did he shank somebody? I'm like, well, no, but, you know, that's the immediate sort of public reaction to hearing, you know, an increase of this size. And they, you know, it just doesn't make a whole lot of sense. I certainly respect the government's position that, you know, this was perfectly fine. And if you don't think that this amount of crease, you know, this increase is, if you don't, if it doesn't give you any kind of pause, then, you know, I really can't get around that. I mean, I think we're just dead in the water. But there's definitely been a chilling effect. We certainly advise our clients now, if they're going back in front of this district court judge, we just, we're not going to, you know, we try to talk them out of the appeal because it's just too much of a risk. Judge Dawson, also, I agree. Shouldn't you really be saying, like, you shouldn't appeal if you're going to continue to commit violations and be convicted of another armed robbery, right? Like, I mean, that's the advice you ought to be giving is, you know, if you're teaching GED classes in school, in prison, and you're, you know, doing all the things that you should be doing, then appeal seems like a good idea. But if you're going to be a bad actor, you should not appeal. And our hope, of course, is for our clients to do well in prison. It's not that you should never do it. It's just you shouldn't do it if you're going to act in those ways, right? And, you know, we try to pull the prison records now, right, to see if this guy has a single infraction, then, no, it's not worth it. Before I forget, I just wanted to, and I know you guys would not expect me to bring this issue up, but the second issue, the Hobbs Act robbery crime and violence issue, I just wanted to note that another panel of this court, in a case called United States v. Larry Pios, that's P-Y-O-S, it's number 17-4269, has ordered supplemental briefing on the question of whether Hobbs Act robbery remains a crime of violence in light of the Supreme Court's new decision in United States v. Taylor. So I just wanted to bring that to this panel's attention. This panel could also order supplemental briefing on the issue. It could put this case in abeyance for the other decision. I simply wanted this panel to be aware of it. Let's see if there's any other. You know, I can report that, you know, as a result of my outstanding advocacy, that when Mr. Singletary is eventually released from prison when he's about 50, he's not going to have those two pesky financial conditions of supervised release. So, you know, I have certainly achieved something in this case. But we would ask for a remand to a different district court. Thank you, Your Honors. Thank you very much. Thank you very much. We thank both of you for being here today. We are sorry we cannot come down to shake hands, but we very much appreciate your fine work in this case. I think that makes us done for the day. The courtroom deputy will adjourn us until tomorrow. This honorable court stands adjourned. Signed, aye. God save the United States. This honorable court.
judges: Pamela A. Harris, Julius N. Richardson, Patricia T. Giles